UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| FRANCES BENSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 13-022-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Frances Benson ("Benson" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 16, 25] Benson contends that the administrative law judge ("ALJ") erred in finding that she is not entitled to a period of disability and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). She seeks reversal of the ALJ's decision and an award of benefits. She has also filed a separate motion to remand for consideration of new evidence. [Record No. 12] The Commissioner asserts that the ALJ's decision was proper and should be affirmed and that remand is not warranted. [Record Nos. 24, 25]

For the reasons discussed below, the Court will grant the Commissioner's motion for summary judgment. Benson's motion for summary judgment and her motion to remand will be denied.

-1-

# I.

On September 8, 2009, Benson applied for a period of disability and DIB under Title II of the Act.  [*See* Administrative Transcript, pp. 177-83; hereafter "Tr."]  She alleged a disability beginning August 28, 2008.  [*Id.*]  Benson's applications were denied initially and upon reconsideration.  [Tr., pp. 94-97, 98-101, 105-06]  On November 28, 2011, an administrative hearing was held before ALJ William H. Gitlow in Prestonsburg, Kentucky.  [Tr., pp. 19, 36-62]  Benson appeared and testified, represented by attorney William L. Roberts.  [*Id.*]  Vocational expert ("VE") Anthony T. Michael, Jr. also testified at the hearing.  [*Id.*]  In a decision dated January 25, 2012, ALJ Gitlow found that Benson was not disabled under sections 216(i) and 223(d) of the Act.  [Tr., p. 28]

Benson was forty-eight years old at the time of the ALJ's decision.  [Tr., pp. 27, 39, 177]  She has a eleventh grade education and has past relevant work as a cashier and a sandwich maker.  [Tr., pp. 27, 43, 45, 195-96, 199]  Her alleged disability stems from anxiety, tendinitis in her foot, arthritis in her leg, low back and disc problems, difficulty sleeping, and depression.  [Tr., p. 97, 194]

After reviewing the record and the testimony presented during the administrative hearing, the ALJ concluded that Benson suffered from a combination of severe impairments, including: "degenerative disc disease of lumbar spine, lung mass, and depression."  [Tr., p. 21]  However, ALJ Gitlow concluded that none of these impairments were of listing level severity.  [Tr., p. 22]  Notwithstanding these impairments, the ALJ found that Benson retained the residual functional capacity ("RFC") to:

lift and carry 20 pounds occasionally, 10 pounds frequently and has need to alternate sitting and standing at 30 to 60 minute intervals. She can occasionally climb, balance, stoop, crouch, kneel, and crawl; cannot climb ladders, ropes, or scaffolds; must avoid work in temperature extremes; at unprotected heights; around dangerous moving machinery; in high humidity; and excessive dues, fumes, or gases.

[Tr., p. 23]  Additionally, the ALJ found that:

[Benson] has a moderately limited ability to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting.  However, she is able to understand and remember simple instructions; sustain attention for simple, structured tasks for periods of two hour segments; adapt to changes if they are gradually introduced and infrequent; make simple work-related decisions; maintain appropriate appearance and hygiene; recognize and appropriately respond to hazards; work in the presence of others; and accept supervision.

[Tr., p. 22]

Based on the testimony of VE Michael, the ALJ found that Benson could not perform past relevant work.  [Tr., p. 27] But after considering her age, education, work experience, and RFC, ALJ Gitlow found that Benson could perform other jobs, such as route clerk, and inspector, as well as sorter, and assembler.  [Tr., pp. 27-28] And, based on his finding that Benson could perform other work existing in significant numbers in the national economy, the ALJ concluded that Benson was not disabled.  As a result of this assessment, Benson was denied a period of disability and DIB.  [Tr., pp. 28-29]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment

of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has

the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

Additionally, under § 405(g), the Court may remand a case under two separate circumstances. These remands are referred to as "sentence four" and "sentence six" remands. In a sentence four remand, the Court has the "power to enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand under sentence four must accompany an order affirming, modifying, or reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). A sentence six remand is appropriate "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Unlike a sentence four remand, in a sentence six remand, the Court "does not rule in any way as to the correctness of the administrative determination." *Melkonyan*, 501 U.S. at 98. Instead, remand is the result of new evidence "that was not available to the claimant at the time of the administrative proceeding and that . . . might have changed the outcome of the prior proceeding." *Id.*

## III.

### A.    Prior Administrative Proceedings

Benson argues that remand is necessary because ALJ Gitlow's decision is "premised on a fatally incomplete record and inaccurate past history" which compromises the legal basis of the Commissioner's final decision. [Record Nos. 12, 16] Benson contends that she became disabled on December 31, 1992, due to mental impairments and that the Commissioner has never proven that her mental impairments ever improved in accordance with the Sixth Circuit's holding in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997), and Acquiescence Ruling ("AR") 98-4(6). As a result, Benson asserts that the Commissioner's prior termination of benefits was in error. Additionally, she maintains that the subsequent denials of

her other applications for benefits (including ALJ's Gitlow's determination) also repeated this mistake.

In *Drummond*, the claimant's initial application for Supplemental Security Income was denied by an ALJ, finding that the claimant retained the RFC to perform "sedentary" work. *Drummond*, 126 F.3d at 838. The claimant filed another application for Supplemental Security Income two years later. Another hearing was held before an ALJ. This time, the ALJ concluded that the claimant had the RFC to perform "medium" work. *Id*. at 839. The Sixth Circuit held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. at 842.

*Drummond* mandates that, absent evidence that a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on another ALJ in a subsequent proceeding. *Id.* at 841. The Commissioner is required to prove changed circumstances to escape principles of res judicata. *Id.* at 842-43 (holding that the Commissioner does not have "unfettered discretion to reexamine issues previously determined absent new and additional evidence . . . [j]ust as [a claimant] is barred from relitigating an issue that has been previously determined, so is the Commissioner"). Therefore, an ALJ adjudicating a subsequent disability claim arising "under the same title of the Act as the prior claim" must adopt the original ALJ's final determination unless "new and material evidence" demonstrates a change in the claimant's condition. *Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 427; *see also* AR 98-4(6), 1998 SSR LEXIS 5, at *9 ("[A]djudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the

claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . . .").

As indicated above, Benson has filed numerous applications for benefits. In August 1993, she filed an application for DIB that was granted due to her anxiety and personality disorder. [*See* Tr., pp. 69, 83] Benson was found to be eligible for benefits beginning December 31, 1992. [*Id.*] However, in February 1997, benefits payments stopped because it was determined that she had medically improved and could work. [*Id.*] Benson requested a hearing to contest the cessation of benefits. Her appeal was denied in a January 28, 1999, decision by ALJ Andrew J. Chwalibog. [Tr., pp. 66-76] Benson's subsequently sought review with the United States District Court in West Virginia. [Tr., p. 83]

While the claimant's civil action was pending, Benson filed applications for DIB and Supplemental Security Income ("SSI") on March 22, 2000. [*Id.*] Those claims were denied by ALJ James S. Quinlivan following two hearings in December 2000 and June 2001. [Tr., pp. 83-93] A review of the claimant's certified earnings records indicate that, as of July 13, 2011, the only period of disability entitlement was December 1992 to May 1999. [Tr., pp. 184-85] Additionally, all of her other claims resulted in a "denial/disallowance." [*Id.*] More than eight years later, Benson filed her current application for DIB, alleging a disability beginning on August 26, 2008. [Tr. 177-83]

Benson's sole contention in her motion to remand is that because ALJ Chwalibog and Quilivan's unfavorable administrative decisions failed to evaluate her claims under *Drummond* and AR 98-4(6), ALJ Gitlow's 2012 unfavorable decision concerning her 2009 DIB application

is erroneous and should be remanded.  [Record No. 12; *see also* Record No. 16-1, pp. 1-3]  This argument is without merit and untimely.

Beginning with ALJ Chwalibog's 1999 decision, the appropriate time to raise alleged legal errors with the decision was at the time she appealed that decision to the Appeals Council and then to the district court.  *See* 20 C.F.R. §§ 404.967, 404.968, 404.981.  Moreover, even if the claimant had timely raised her concerns of the ALJ's application of *Drummond*, ALJ Chwalibog considered new and material evidence regarding her impairments dated from after her December 31, 1992 favorable decision.  [Tr., pp. 70-74, 75]  The ALJ included a finding that explicitly stated that medical evidence established that there has been improvement in her condition since December 31, 1992.  [Tr., p. 75]  Therefore, Benson's contention concerning her 1999 denial decision is also misplaced.  *Cf. Castrovinci v. Astrue*, No. 1:10CV2650, 2012 WL 928736, at *6-7 (N.D. Ohio Mar. 19, 2012) (affirming an ALJ's decision where *Drummond* was not explicitly referred to, but the language of the decision indicated that consideration was given to the prior ALJ's decision and RFC in addition to medical evidence post-dating the prior decision in evaluating the claimant's impairments).

Likewise, Benson's argument concerning ALJ Quinlivan's decision is without merit.  Again, the claimant's attempt to attack ALJ Quinlivan's decision for an alleged failure to properly apply *Drummond* and AR 98-4(6) more than ten years after the decision was issued should have been raised in an appeal of that decision.  *See* 20 C.F.R. §§ 404.967, 404.968, 404.981, 416.1467, 416.1468, 416.481.  Benson's failure to appeal ALJ Quinlivan's decision rendered it final.  Additionally, ALJ Quinlivan found that Benson had a RFC that was *more*

restrictive than ALJ Chawlibog's RFC determination.  [*Compare* Tr., p. 74-75, *with* Tr., p. 92]

*See Whitaker v. Astrue*, No. 08-120-HRW, 2009 U.S. Dist. LEXIS 64956, at *8 (E.D. Ky. July 27, 2009) ("The Court is somewhat perplexed by Plaintiff's contention as the ALJ in this case found a more restrictive RFC than that of the 2005 decision. In other words, the instant decision is more favorable to the Plaintiff than the prior decision.").  More specifically, ALJ Quinlivan imposed both non-exertional limitations resulting from Benson's mental impairments, as well as limiting her to work at the light exertional level.  [Tr., p. 92]  In reaching this determination, the ALJ's decision indicates that new and material evidence from after ALJ Chwalibog's January 28, 1999 decision was considered.[1]  [Tr., pp. 85, 87-90]

Finally, Benson's contention that the Commissioner is required to retain the 1993 determination that she is disabled because the record based on her 2009 application for DIB does not contain all of the evidence concerning each of her prior claims is without merit.  As an initial matter, the claimant has failed to identify any authority under which the decision to terminate her benefits based upon a finding that over a six-year period she had medically improved should be disregarded, especially when the cessation of benefits was upheld on appeal.  Moreover, in light of Benson's prior unfavorable decision and absent new and material evidence of changed medical circumstances, principle of *res judicata* would only apply concerning the claimant's preceding RFC assessment.

---

1    Benson cursorily raises a number of additional arguments concerning her prior administrative decisions.  For instance, she contends that: (i) ALJ Chwalibog's written decision is undated and fails to identify "what sort of representation the claimant had at the hearing; and (ii) ALJ Quinlivan's decision is undated and unsigned.  [Record No. 12, p. 2]  The time to raise these issues has long passed and her failure to timely do so has resulted in waiver of these claims.  Moreover, Benson provides no support indicating that even if these issues were timely raised that they would warrant the relief she seeks.

Here, ALJ Gitlow based his determination on sufficient evidence of changed circumstances. Benson cannot be heard that the ALJ Gitlow was required to adopt a 1993 determination that she was unable to perform any work and was disabled when her earnings reports reflect that she worked from between the time of ALJ Quinlivan and Gitlow's decision (from 2002 through 2008). [Tr., pp. 185-88, 195-96, 203] Further, to the extent Benson claims that her disability should have been found to have "continued," she fails to acknowledge that her prior period of disability ceased in May 1999. [*See* Tr., p. 184.] In short, Benson's argument that ALJ Gitlow is bound by a 1993 determination of disability under the principle of *res judicata* is without merit. Remand is not required.[2]

### B.  Weight of Medical Opinions

In her motion for summary judgment, Benson contends that the ALJ impermissibly credited the medical opinions of non-examining state agency examiners Drs. William C. Cain and Frak Ferrel. Additionally, she asserts that the ALJ did not provide "good reasons" for "rejecting" the opinion of her treating physician. [Record No. 16-1, pp. 3-4] Both arguments are unavailing.

---

2       Benson's argument that a sentence six remand is necessary because the current administrative record does not include a copy of the 1993 decision as well as the entirety of that record is equally unavailing. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec. of Health & Human Serv.*, 804 F.2d 964, 966 (6th Cir. 1986). A sentence six remand is appropriate only when the claimant presents new and material evidence that, for good cause, was not made part of the record earlier. 42 U.S.C. § 405(g). Benson has failed to meet this burden. Benson's attorney indicates that he made "inquiries" into the location of the claimant's 1993 claims file but was told that it "is in storage somewhere." [Record No. 12, p. 2] This is not a sufficient explanation and is not adequately demonstrative of good cause. Further, not only does the claimant not have possession of the 1993 claims file (or indicate that possession is imminent), she only speculates about the materiality of those files. [Record No. 12, pp. 2-3] Thus, Benson has failed to present any new, material evidence to be considered on remand, as required for a sentence six remand under § 405(g).

1.        **Treating Physician**[3]

A treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record.  20 C.F.R. §§ 404.1527(c)(2); *see also Walker v. Sec'y of H.H.S.*, 980 F.2d 1066, 1070 (6th Cir. 1992); SSR 96-2p, 1996 WL 374188 (Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record).  However, if the treating source's opinion is not entitled to controlling weight, this does not necessarily mean that the opinion should be completely rejected.  Rather, the ALJ must determine what weight to give the opinion by considering the following factors:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)-(6).

Additionally, the ALJ must always give "good reasons" for accepting or rejecting a medical opinion.  20 C.F.R. § 404.1527(c)(2).  However, as this Court has acknowledged on numerous occasions,  an "ALJ 'is not bound by conclusory statements of doctors, particularly

---

3        Benson does not identify the treating physician she references in her motion.  This failure constitutes a waiver of the argument.  *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).  Notwithstanding the claimant's failure to properly develop this issue, the Court has reviewed the entirety of the record and it appears that Dr. Benjamin C. Pinner is the only treating source opinion.  [Tr., pp. 434-38]  The Court, therefore, presumes Benson is referring to Dr. Pinner when arguing that ALJ Gitlow did not provide good reasons for discounting his opinion.

where they are unsupported by detailed objective criteria and documentation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."). Notwithstanding the deference given to the medical opinion of the treating physician, the ultimate decision on disability rests with the ALJ. *Walker v. Sec'y of H.H.S.*, 980 F.2d 1066, 1070 (6th Cir. 1992) Moreover, the regulations provide that a physician's opinion regarding whether a claimant is disabled or unable to work will be given no "special significance." 20 C.F.R. § 404.1527(d)(3).

On June 30, 2010, Dr. Pinner completed a medical source statement prepared by Benson's attorney. [Tr., pp. 434-38] Pinner stated that the claimant suffered from lower back pain, leg pain, and that clinical findings and objective signs indicate tenderness over her back and hips. [Tr., p. 434] He found that Benson could lift and carry fifty pounds rarely, twenty pounds occasionally, and ten pounds frequently. [Tr., p. 436] Additionally, she could sit for more than two hours at a time for at a time for at least six hours in an eight-hour day and was able to stand for forty-five minutes at a time for about two hours in an eight-hour day. [Tr., pp. 435-36] The claimant would need to walk every sixty minutes for five minutes. [Tr., p. 436] However, she would need to rest for five minutes every hour. [*Id.*]

Dr. Pinner also assessed that Benson would need to elevate her legs above her heart twenty percent of the time when sitting for prolong periods of time. [*Id.*] He found that the claimant could occasionally twist, stoop, crouch, and climb stairs but could rarely climb ladders.

[Tr., p. 437]  Dr. Pinner concluded that Benson was unable to sustain any full-time employment without interference from her symptoms because she suffered from pain on a daily basis.  [*Id.*] Despite this conclusion, Dr. Pinner also noted that Benson was a malinger and often exaggerated her symptoms, that emotional factors contributed to her symptoms and limitations, and that she was unmotivated.  [Tr., pp. 435, 437]

Contrary to Benson's argument, ALJ Gitlow properly afforded Dr. Pinner's opinion "minimal weight" and provided good reasons for reaching this conclusion.  [Tr., p. 26]  He noted that objective medical evidence and diagnostic testing did not support Dr. Pinner's assessment. Specifically, the claimant's MRI demonstrated modest conditions and the Electromyogram/Nerve Conduction Studies ("EMG/NCS") showed intact neurological signs and were normal.  [Tr., p. 456]  Additionally, Dr. Pinner's own treatment notes, as well the treatment notes of orthopedic surgeon Dr. Jonh T. Perrott, reflect that Benson's MRI only showed very mild to moderate results.  [Tr., pp. 351, 377, 385-86, 425]

The ALJ highlighted that Dr. Pinner's conclusion that Benson must be able to elevate her legs over her heart for twenty percent of the time was not supported by any of the objective, clinical evidence of record.  *See Kornecky*, 167 F. App'x at 509.  Indeed, the objective medical evidence never displayed anything more than intermittent trace edema and Dr. Pinner had never previously recommended this restriction in treating this ailment.  Rather, the treatment notes reflect that Benson's lower extremity edema was treated with medication and compression hose. [Tr., pp. 26, 320-21, 330, 496, 501]  *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x. 332, 335 (6th Cir. 2007) (noting that modest treatment record of claimant's ailments belied claim of disability).

-14-

Further, ALJ Gitlow noted the internal inconsistencies of Dr. Pinner's assessment. [Tr., p. 26] More specifically, Dr. Pinner concluded that the claimant could sit for more than two hours at a time, but also stated that she needed to walk every sixty minutes. [Tr., pp. 26, 435-36] The ALJ also took issue with Dr. Pinner's heavy reliance on Benson's subjective complaints, while also explicitly acknowledging that she was a malingerer who exaggerated her symptoms. [Tr., pp. 26, 434-435, 437] And Dr. Pinner was not the only examining doctor to note Benson's malingering. [Tr., pp. 425, 435, 427]

Notwithstanding Benson's assertion that ALJ Gitlow's erred in not adopting Dr. Pinner's RFC assessment, she fails to recognize that the ALJ's RFC is substantially consistent with that of Dr. Pinner's. The ALJ found that Benson could lift and carry twenty pounds occasionally and ten pounds frequently, as well as only occasionally climb stairs, stoop, and crouch and never climb ladders. [*Compare* Tr., p. 23, *with* Tr., pp. 436-37.] He also concluded that the claimant would need to alternate between sitting and standing at thirty to sixty minute intervals. This is consistent with Dr. Pinner's assessment that Benson could not stand for more than forty-five minutes before needing to sit down or move around. [*Compare* Tr., p. 23, *with* Tr., p. 435.]

In short, ALJ Gitlow properly assigned minimal weight to Dr. Pinner's opinion. Dr. Pinner's assessment was not supported by and was inconsistent with the objective medical evidence in the record as well as with his own treatment notes. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given [substantial or controlling] deference when supported by objective medical evidence."). As outlined above, the ALJ provided good reasons for discounting the opinion of Dr. Pinner and ALJ Gitlow's determination is supported by substantial evidence. *See Smith v. Comm'r of Soc.*

-15-

*Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (the ALJ's decision not to give treating source's opinions controlling weight because the opinions were "inconsistent with the overall evidence of record" was "a factual determination within [the ALJ's] discretion").

### 2.    Non-Examining Medical Sources

Benson's argument that the ALJ erred by affording non-examining state agency medical sources Dr. Cain and Dr. Ferrell "controlling weight" is also without merit. As an initial matter, ALJ Gitlow did not give these sources controlling weight. Instead, he provided the opinions "great weight." [Tr., p. 26] *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (noting that opinions from non-examining source are never assessed for "controlling weight"). Nonetheless, it is proper to consider the opinions of state agency medical consultants. *See* 20 C.F.R. § 404.1527(e). And because state agency consultants are considered experts in the Social Security disability programs, their opinions may be entitled to great weight if they are supported by the evidence of the record. *See* 20 C.F.R. § 404.1527(e)(2), (f)(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996); *see also Hibbard v. Astrue*, 537 F. Supp. 2d 867 (E.D. Ky. 2008). Contrary to Benson's argument, it is not a *per se* error to give more weight to the opinion of a non-examining physician than that given to an examining or treating physician's opinion. *See, e.g., Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x. 636, 642 (6th Cir. 2013) (observing that, in appropriate circumstances, opinions from state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources).

On April 28, 2010, Dr. Cain reviewed the claimant's medical records, including Dr. Pinner's treatment and clinical notes. He concluded that Benson could: (i) lift and carry twenty pounds occasionally and ten pounds frequently; (ii) stand and walk and sit for about six hours

in an eight-hour workday; and (iii) occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. [Tr., pp. 417, pp. 417-18, 423] He also found that the claimant should avoid moderate exposure to fumes, odors, dusts, and other hazards, including heights and machinery. [Tr., p. 420] Following Dr. Cain's review, Dr. Ferrell reviewed Benson's medical records and, on October 4, 2010, and reached the same conclusions, save for an additional limitation of avoidance of "concentrated exposure" to extreme heat, humidity, and hazards. [Tr., p. 514]

ALJ Gitlow assessed Drs. Cain and Ferrell's opinions and found them consistent with the weight of the record as a whole and the objective medical evidence. *See* 20 C.F.R. § 404.1527(c)(4). Again, as outlined above, other evidence supported these opinions. Additionally, the ALJ properly discounted Benson's credibility, noting, in part, that both her examining orthopedic surgeon and treating physician independently concluded that she was malingerer and exaggerated her pain. *See, e.g.,* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("Subjective complaints of pain or other symptoms shall not alone be conclusive evidence of disability."). He also noted that she was receiving narcotic medication from two doctors for the same period of time. Thus, the ALJ did not err in providing Dr. Cain and Dr. Ferrell's opinions great weight. Their assessments provide substantial evidence in support of the ALJ's determination. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x. 997, 1002 (6th Cir. 2011) (ALJ was not required to give relatively less weight to state agency physician opinions simply because they are contrary to treating physician opinion).

## C.    Consideration of Impairments

Finally, Benson asserts that the ALJ failed to consider her physical and mental impairments in combination, without regard to whether any such impairments would be of sufficient severity to render her disabled. [Record No. 16-1, pp. 3-4] She continues that "[w]hen the severity of [her] physical and mental [impairments] was considered by the Vocational Expert, then a finding of continued disability should have been forthcoming." [*Id.*] It appears that she is attempting to reference the hypothetical RFC posed to the VE by her attorney at the administrative hearing which appears to be based on Dr. Brad Adkin's October 2011 assessment of the claimant. [*See* Tr., pp. 60-61.] Dr. Adkins is a psychologist that evaluated Benson at the request of her attorney.[4] [Tr., pp. 545-54]

A hypothetical question posed to a VE "need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001)); *see also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints."). The VE's testimony relies, in part, on the ALJ's assessment of what a claimant can or cannot do. *See Webb*, 368 F.3d at 632-33 (citations omitted). Additionally, the ALJ is permitted to rely on the VE's answer to a hypothetical question only to the extent the assumptions included in the hypothetical are supported by substantial evidence. *Varley*, 820 F.2d at 779. The VE's answers to these questions are substantial evidence "only if

---

4       Benson has not explicitly challenged the weight provided to Dr. Adkins' opinion and, therefore, has waived any such argument. Regardless, the ALJ did not err in declining to adopt Dr. Adkins' opinion.

the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.*

Here, the ALJ's hypothetical questions captured all of the limitations he included in his assessment of Benson's RFC, as well as Benson's occupational capability. Specifically, concerning Dr. Adkins' opinion, ALJ Gitlow provided Dr. Adkins' assessment little weight, finding it to be inconsistent with the overall evidence of record. [*See* Tr., pp. 26-27] The ALJ noted that Dr. Adkins' opinion was inconsistent with Dr. Pinner's assessment of normal mental status and the state agency mental assessment, as well as Benson's lack of a history of counseling or mental health treatment prior to Dr. Adkins' assessment. [Tr., pp. 26-27, 479, 488, 496, 506] The ALJ also indicated that, despite beginning mental treatment at Mountain Comprehensive Care Center in October 2011, this treatment only began one moth prior to the administrative hearing. [Tr., pp. 26-27, 558-68] The ALJ also noted that such a mental assessment was inconsistent with the claimant's work history.

As indicated above, a claimant must demonstrate that she was unable to engage in any substantial gainful activity by reason fo a medically determinable physical or mental impairment that could have been expected to result in death or had lasted (or expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). It is the claimant's burden to provide relevant medical and other evidence she believes will prove her alleged disability as a result of physical or mental impairments. See 20 C.F.R. § 404.1512(a), (c). Benson did not meet this burden. The ALJ noted that there was no indication that her deterioration of mental capacity in October 2011 would last for a twelve month period. [Tr., p. 26] And, based on the objective medical evidence in the record, the ALJ did not err in

concluding that these impairments did not significantly interfere with her ability to work. Thus, ALJ Gitlow properly declined to adopt Dr. Adkins' assessment of Benson's mental capacity and he did not err in declining relying on the RFC hypothetical posed by Benson's attorney to the VE at the administrative hearing. *See Foster*, 279 F.3d at 356 (finding that the ALJ did not err in "declining to include limitations" in hypothetical question to the VE that were "neither explained nor supported by medical or clinical findings"). Substantial evidence supports the ALJ's determination.

## IV.

Benson has not established that she is disabled as defined by the relevant provisions of the Social Security Act. After reviewing the record, the Court does not find any of Benson's arguments persuasive. The ALJ did not err in evaluating the evidence of Benson's impairments and his decision is supported by substantial evidence. Additionally, Benson's contention that remand is warranted is equally unpersuasive. Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff Frances Benson's motion to remand [Record No. 12] is **DENIED**.

2.      Plaintiff Frances Benson's motion for summary judgment [Record No. 16] is **DENIED**.

3.      Defendant Carolyn W. Colvin's motion for summary judgment [Record No. 25] is **GRANTED**.

4.      The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 11th day of August, 2014.



Signed By:

*Danny C. Reeves*

United States District Judge